Case 12-19109    Filed 03/10/14    Doc 70

FILED
MAR 10 2014
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*FOR PUBLICATION*

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re                                     Case No. 12-19109-A-7
                                          DRJ-1
Deaunna Cathleen Grant

            Debtor.
_____/

**OPINION**

Should the estate pay for unauthorized legal services, albeit services that were valuable, rendered by a law firm that it never hired?

**FACTS**

Deaunna Grant ("Grant") was the mother of Robin Grant, a disabled adult. In need of supervision, Robin resided in a care facility operated by Bethesda Lutheran Communities, Inc. ("Bethesda"). While under Bethesda's supervision, Robin died. Grant retained Wild Carter & Tipton ("Wild Carter"), a law firm, to represent her in connection with Robin's death but signed no fee agreement at the time.

Later, Grant filed a Chapter 7 bankruptcy case. She did not schedule or exempt her cause of action against Bethesda, and she did not list Wild Carter as a creditor. Sheryl Strain ("Strain") was appointed the Chapter 7 trustee.

Unaware of Grant's pending bankruptcy, Wild Carter filed a wrongful death action for Grant in Fresno County, California (the "Bethesda action"). But after learning of Grant's bankruptcy, Wild Carter entered into a contingency fee agreement with Grant. The agreement created a charging lien to secure Wild Carter's fee and costs against any recovery obtained.

Shortly after the fee agreement was signed, Strain wrote Wild Carter a letter explaining that she was the trustee of Grant's bankruptcy estate, that the estate owned the Bethesda action, that Wild Carter needed to be employed by the estate, and that Grant had no authority to pursue or settle the claim. Instead of seeking employment, though, Wild Carter filed a proof of claim for $500,000, claiming a security interest in the Bethesda action proceeds based on its charging lien.

Six months after it discovered Grant's bankruptcy, Wild Carter settled the Bethesda action for $240,000 without Strain's authorization or knowledge. Strain only learned of the settlement six weeks after it occurred when, in a routine telephone call that she initiated, Wild Carter told her that it had settled the case and that the proceeds were exempt under California Code of Civil Procedure 704.150 (wrongful death exemption). Unyielding, Strain disputed Grant's entitlement to the exemption, demanded turnover of the settlement proceeds, and threatened to revoke Grant's discharge. Wild Carter provided Strain an accounting of the settlement, which assumed Wild Carter would retain its fee and costs. Strain then promised she would seek approval of the settlement, retroactive approval of its employment, and approval of Wild Carter's compensation. She modified her demand for turnover to include only the net settlement proceeds after deduction of Wild Carter's fee and costs. Wild Carter turned over to Strain $159,687.94, but retained $79,724.26 for its fee and $587.80 for its costs. Wild Carter withdrew its proof of claim.

Next, Strain brought a motion for approval of the settlement and Wild Carter's fee and costs. Strain's motion did not mention that Wild Carter had never been employed to render services to the estate. The court approved the $240,000 settlement with Bethesda but did not decide the issue of Wild Carter's entitlement to fees and costs.

One year after becoming aware of the bankruptcy, Wild Carter has requested *nunc pro tunc* approval of its employment and compensation of $79,724.26 and costs of $587.80. Wild Carter premises the relief requested on (1) its ignorance of bankruptcy law and procedure, including the statutory employment requirements and, by implication, the scope of the automatic stay and the scope of estate property; (2)

its misplaced reliance on the Chapter 7 trustee and her counsel; and (3) its confusion arising from its correspondence with the Chapter 7 trustee. The U.S. Trustee opposes the motion.

At the court's suggestion and before the court's ruling on the employment and compensation motions, Strain recovered from Wild Carter the fee and costs that it had previously withheld.

## JURISDICTION

This court has jurisdiction. *See* 28 U.S.C. § 1334; 11 U.S.C. § 327; General Order No. 182 of the U.S. District Court for the Eastern District of California. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A).

## DISCUSSION

**I.  Standards for *Nunc Pro Tunc* Approval of Unauthorized Services**

Section 327 governs the employment of attorneys by the Chapter 7 trustee. *See* 11 U.S.C. § 327. Section 327(e) applies when a trustee requests approval to employ an attorney for a specified special purpose when the attorney has represented the debtor. *Id.* § 327(e). "The applicant bears the burden of proving that the standards for appointment have been met." *Official Comm. of Unsecured Creditors v. ABC Capital Mkts. Grp. (In re Capitol Metals Co.)*, 228 B.R. 724, 727 (B.A.P. 9th Cir. 1998) (citing *Credit Alliance Corp. v. Boies (In re Crook)*, 79 B.R. 475, 478 (B.A.P. 9th Cir. 1987)).

"The bankruptcy courts in this circuit possess the equitable power to approve retroactively a professional's valuable but unauthorized services." *Atkins v. Wain, Samuel & Co. (In re Atkins)*, 69 F.3d 970, 973 (9th Cir. 1995) (citing *Halperin v. Occidental Fin. Grp. (In re Occidental Fin. Grp.)*, 40 F.3d 1059, 1062 (9th Cir. 1994)). *Nunc pro tunc* approval of an attorney's unauthorized services

under § 327(e) requires two distinct showings. First, a showing must be made that the applicant "does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed," and that the employment is "in the best interest of the estate." 11 U.S.C. § 327(e); *see also Mehdipour v. Marcus & Millichap (In re Mehdipour)*, 202 B.R. 474, 479 (B.A.P. 9th Cir. 1996) ("Applying for nunc pro tunc approval does not alleviate the professional from meeting the requirements of § 327 . . . ."). The attorney must continually qualify under the statutory conflict-of-interest standards throughout the entire period of representation. *See* 11 U.S.C. §§ 327(e), 328(c); *see also Rome v. Braunstein*, 19 F.3d 54, 57-58, 60 (1st Cir. 1994) (holding that compensation may be disallowed if at any time a disqualifying conflict arises and recognizing the need for counsel to avoid such conflicts throughout their tenure).

Second, the applicant must show "exceptional circumstances" that justify *nunc pro tunc* approval. *Atkins*, 69 F.3d at 974; *Mehdipour*, 202 B.R. at 479. "To establish the presence of exceptional circumstances, professionals seeking retroactive approval must . . . (1) satisfactorily explain their failure to receive prior judicial approval; and (2) demonstrate that their services benefitted the bankrupt estate in a significant manner." *Atkins*, 69 F.3d at 975-76; *accord Occidental Fin. Grp.*, 40 F.3d at 1062; *In re Gutterman*, 239 B.R. 828, 830 (Bankr. N.D. Cal. 1999).

## II. Wild Carter's Adversity to the Estate

Undefined by the Code, the term "adverse interest" used in § 327 means the possession or assertion of an interest that lessens the value of, creates a dispute with, or engenders bias against the

estate. *See Dye v. Brown (In re AFI Holding, Inc.)*, 355 B.R. 139, 149 (B.A.P. 9th Cir. 2006). Wild Carter's efforts to secure and retain its fee and costs in the Bethesda action resulted in a disqualifying adverse interest precluding employment by the estate. Wild Carter both possessed and asserted an economic interest that created a dispute with the estate and that tended to lessen its value.

Initially, Wild Carter employed legal process to the detriment of the estate. It created a charging lien against the proceeds of the Bethesda action. As a security interest in the proceeds of litigation, a charging lien secures the payment of attorney's fees. *Fletcher v. Davis*, 33 Cal. 4th 61, 66-67 (2004). In California, a charging lien is "created only by contract," *id.* at 66, and is effective upon execution of the fee agreement, *see Waltrip v. Kimberlin*, 79 Cal. Rptr. 3d 460, 524-25 (Cal. Ct. App. 2008). It has priority "according to the time of [its] creation." *Id.* (citing Cal. Civ. Code § 2897).

Grant and Wild Carter signed their contingency fee agreement more than three months after Grant filed her Chapter 7 bankruptcy petition. This fee agreement created the charging lien. Although the creation of this lien violated the stay, 11 U.S.C. § 362(a)(4), making the lien void, *see Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1081-82 (9th Cir. 2000), it resulted in Wild Carter's possessing and asserting an interest that would tend to lessen the value of estate property and create a potential dispute with the estate. Placing a lien on estate property is an action that tends to reduce the value of any equity in such property available for creditors and raises the potential for a dispute with the trustee over the effect of the lien. This proposition remains true even if such lien were later

determined void.  Legal actions do not lose their adverse quality merely because they are ineffectual.

Wild Carter also filed a secured claim against the estate for $500,000.  It later withdrew this claim.  Like the creation of the charging lien, Wild Carter's filing the secured claim constituted the assertion of an interest that tended to lessen the value of the bankruptcy estate and created a potential dispute with the estate.  Because Wild Carter's services had not been authorized, the estate was entitled to all of the proceeds of the Bethesda action including the amount of Wild Carter's asserted fee and costs.  And withdrawing the claim subsequently did not negate Wild Carter's adversity to the estate during the time that the claim was on file with the court.

By its actions, moreover, in retaining both the full amount of the settlement proceeds at first and then later only its fee and costs, Wild Carter exercised control over and acted to obtain possession of property of the estate in violation of the stay.  11 U.S.C. § 362(a)(3); *see also In re Cooper*, 263 B.R. 835, 837-38 (Bankr. S.D. Ohio 2001) (settling a personal injury claim without trustee authorization violates the stay).  Wild Carter settled the Bethesda action without Strain's authorization, and acting consistently with its charging lien, it took actual possession of the entire amount of the settlement proceeds.  It then retained a portion of the proceeds representing its fee and costs for almost five months after the settlement occurred and only remitted this amount to Strain when the court refused to approve the compromise with Bethesda.  This retention of the settlement proceeds in violation of the stay placed Wild Carter in a position adverse to the estate.

### III. Wild Carter's Unsatisfactory Explanation

Wild Carter has not provided a satisfactory explanation for its failure to seek prior judicial approval of its services. Even if the court accepted as true Wild Carter's reasons for failing to obtain prior judicial approval, such reasons fail as a matter of law because they constitute either garden-variety negligence or ignorance of the mandate of § 327 and related procedures. Negligence is not an exceptional circumstance that warrants *nunc pro tunc* approval of employment. *DeRonde v. Shirley (In re Shirley)*, 134 B.R. 940, 944 n.4 (B.A.P. 9th Cir. 1992) ("The failure of counsel to procure court approval through inadvertence is not one such [extraordinary] circumstance." (citing *In re Ark. Co.*, 798 F.2d 645, 649 (3d Cir. 1986))); *see also In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 231 (Bankr. E.D. Cal. 1988) ("Mere negligence is not sufficient to establish the requisite exceptional circumstances.").

Similarly, an attorney's ignorance of bankruptcy law and procedure concerning employment does not constitute an exceptional circumstance that justifies retroactive approval of the attorney's employment. *In re Johnson,* 21 B.R. 217, 218 (Bankr. D. Colo. 1982). "[P]rofessionals are charged with knowledge of the law." *Andrew v. Coopersmith (In re Downtown Inv. Club III)*, 89 B.R. 59, 63-64 (B.A.P. 9th Cir. 1988).

Furthermore, the record does not support a finding that Wild Carter was completely unaware of the necessity to be employed. About four months before Wild Carter settled the Bethesda action, Strain's letter to Wild Carter explained that she was the Chapter 7 trustee for Grant's bankruptcy, that the estate owned the Bethesda action, and that Wild Carter needed to be employed. Additionally, Wild Carter has

had significant bankruptcy experience.  In the last five years, 11 of Wild Carter's attorneys have represented debtors and creditors in 166 different matters pending before the bankruptcy court.  Wild Carter's position that it was ignorant of the law's requirements is untenable given its significant bankruptcy experience.  Accordingly, Wild Carter has not satisfactorily explained its failure to seek prior judicial approval of its services.

## CONCLUSION

For the reasons discussed, the motion for *nunc pro tunc* employment is denied.  Since employment is a prerequisite to compensation from the estate, the motion for compensation is also denied.[1]  The court will issue a separate order.

Dated: March 10, 2014

Fredrick E. Clement
United States Bankruptcy Judge

---

[1] The Ninth Circuit has rejected the remedy of a quantum meruit award for unauthorized post-petition services that are not compensable under bankruptcy law.  *Occidental Fin. Grp.*, 40 F.3d at 1063.  But Wild Carter may hold an unsecured quantum meruit claim for services rendered to Grant prior to the date of the petition.  *See Mardirossian & Assocs., Inc. v. Ersoff,* 62 Cal. Rptr. 3d 665, 680 (Cal. Ct. App. 2007).  The court does not address (1) the merits of such a claim for pre-petition services; (2) the proper procedure for asserting such a claim, whether by amending Proof of Claim No. 6, filed May 8, 2013, or by filing a new Proof of Claim; (3) the timeliness or distribution priority of such a claim, 11 U.S.C. § 726, Fed. R. Bankr. P. 3002(c); or (4) the effect of the withdrawal of Proof of Claim No. 6 on any new or amended Proof of Claim, Fed. R. Bankr. P. 3006.

# Instructions to Clerk of Court
## Service List

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked __X__, via the U.S. mail.

    Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and ____X_____ Other Persons Specified Below:

GE Capital Retail Bank
c/o Recovery Management Systems Corporation
25 SE 2nd Avenue, Suite 1120
Miami, FL 33131-1605
Attn: Ramesh Singh

Deaunna Cathleen Grant
589 E. El Paso, #105
Fresno, CA 93720

Sheryl Ann Strain
Chapter 7 Trustee
575 E. Alluvial Ave., #101
Fresno, CA 93720

Robert A. Hawkins, Esq.
1849 N. Helm, #110
Fresno, CA 93727

David R. Jenkins, Esq.
P. O. Box 1406
Fresno, CA 93716

Wild, Carter & Tipton
A Professional Corporation
246 West Shaw Avenue
Fresno, CA 93704

Monrae L. English, Esq.
WILD, CARTER & TIPTON
246 West Shaw Avenue
Fresno, CA 93704

Greg Powell, Esq.
Office of the U. S. Trustee
2500 Tulare Street, Suite 1401
Fresno, CA 93721